**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**DERRICK CAMERON NORRIS,**    :

     **Petitioner,**    :

   **v.**    :    **Case No. 2:15-cv-764**

**JASON BUNTING,**    :    **JUDGE ALGENON L. MARBLEY**
                            **Magistrate Judge Kemp**
     **Respondent.**    :

<u>**REPORT AND RECOMMENDATION**</u>

    Petitioner, a state prisoner, filed this action pursuant to 28 U.S.C. § 2254 seeking a writ of habeas corpus. This matter is before the Court on the petition, respondent's return of writ, petitioner's traverse, the supplemental return of writ, Petitioner's memorandum contra,  and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that the petition be **DENIED** and that this action be **DISMISSED**.

**I.  Procedural History**

    This action involves petitioner's September 17, 2004, guilty plea in the Muskingum County Court of Common Pleas to charges of murder with a firearm specification, aggravated robbery, and tampering with evidence. Much of the early procedural history of this case is taken from a prior Report and Recommendation  of this Court issued in connection with Petitioner's first federal habeas corpus petition.  *See Norris v. Moore*, 2008 WL 3414133 at *1 (S.D. Ohio Aug. 8, 2008), *adopted and affirmed* 2008 WL 4346501 (S.D. Ohio Sept. 18, 2008).

Pursuant to the terms of a negotiated guilty plea in which Petitioner pleaded guilty to the three offenses just mentioned (he had been indicted for other offenses as well), the trial court sentenced petitioner to an aggregate term of thirty-three years to life incarceration.  Petitioner did not timely appeal. On April 5, 2005, he filed a motion for delayed appeal in the state appellate court.  On April 25, 2005, the appellate court dismissed petitioner's motion due to petitioner's failure to attach a certificate of service. He did not pursue an appeal of that decision to the Ohio Supreme Court.

On January 21, 2005, Petitioner filed a post-conviction petition in the state trial court in which he alleged that his sentence violated *Blakely v. Washington*, 542 U.S. 296 (2004).  On July 19, 2005, after a hearing, the trial court denied petitioner's post-conviction petition.   Petitioner filed a timely appeal in which he raised the following assignments of error:

1.   The trial court deprived the appellant of his absolute right to procedural due process of law where the court held the evidentiary hearing without first appointing appellant counsel prior to such hearing.

2.   The trial court erred to the prejudice of appellant and abused its discretion in holding that appellant was not entitled to relief because the sentence was agreed to and therefore was unreviewable in violation of his absolute right to due process of law.

3.   The trial court deprived the appellant of his substantive right to due process of law where the court refused to modify his definite sentences to minimum concurrent terms of imprisonment.

4.   Defendant-appellant's non-minimum consecutive definite sentences are void ab initio where the appellant was denied his

2

> fundamental due process right to notice and an opportunity to be
> heard.

*See State v. Norris,* 2006 WL 1851698 (Muskingum Co. App. June 29, 2006). On June 29, 2006, the appellate court affirmed the judgment of the trial court. *Id.* Petitioner did not appeal to the Ohio Supreme Court.

On August 13, 2007, petitioner filed, in this Court, a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In that case (Case No. 2:07-cv-795) he alleged that he was in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

1. Definite sentences void for lack of subject matter jurisdiction per *Apprendi-Blakely* issues.

2. Habeas corpus relief must be made permanent because no State corrective process exists per 28 U.S.C. 2254(B)(I)(sic).

That case was dismissed because the petition had not been timely filed. *See Norris v. Moore,* 2008 WL 4346501 (S.D. Ohio Sept. 18, 2008).

On September 10, 2008, Petitioner moved in the Fifth District Court of Appeals for a delayed appeal, alleging that he was not notified of his right to appeal by the trial court. He presented the following assignments of error:

1. Defendant-Appellant's guilty plea is void where he was induced to plead guilty to an indictment that fails to charge the offense. (Felony Murder).

2. The trial court lacked subject-matter jurisdiction to accept the plea or to render judgment. *State v. Cimpritz,* (1953), 158 Ohio St, 490; *State v. Colon*, 845 N.E. 2d 917 (2008), applied.

3. Defendant-Appellant was deprived of the effective assistance of

3

counsel in this case, rendering his plea void. *Strickland v. Washington,* 466 U.S. 668 (1984), applied.

4.     Defendant-Appellant's conviction and sentence for murder under O.R.C. 2903.02(B) was secured in violation of his equal protection of law rights of the Ohio & U.S. Constitutions.

(Doc. 14, Ex. 1).  On October 23, 2008, the appellate court denied the motion because

Petitioner had previously perfected an appeal. *Id.*, Ex. 2.

Petitioner next appealed to the Ohio Supreme Court and raised the following

propositions of law:

1.     A denial of the absolute right to procedural due process of law is manifest where a court of appeals dismisses a motion for delayed appeal where the appellant alleges ineffective assistance of counsel and lack of notice of the right to appeal as cause for the delay in filing for appeal.

2.     The trial court lacked subject-matter jurisdiction to accept the guilty pleas as to the murder and aggravated robbery convictions because the indictment failed to charge an offense. *State v. Cimpritz,* [1953], 158 Ohio St. 490; S*tate v. Colon*, 882 N.E. 917 [2008], applied.

3.     Defendant-appellant's conviction and sentence for felony-murder and aggravated robbery must be reduced to the least degree of the offenses in accord with the due process clause of the Ohio and U.S. Constitution.

4.     Defendant-appellant was deprived of the effective assistance of counsel in this case where trial counsel induced him to plead guilty to felony murder and aggravated robbery counts in the indictment where he could not have been convicted by bench or jury.

*Id.*, Ex. 3.  On March 25, 2009, the Ohio Supreme Court declined to consider the appeal.

*Id.*, Ex. 4.

On March 5, 2010, Petitioner filed a motion with the trial court for a re-sentencing

hearing, based on his assertion that he had not been notified of post-release control at his original sentencing hearing. *Id.*, Ex. 5. The trial court denied the motion. On May 3, 2010, Petitioner appealed the denial of the motion for re-sentencing, raising one assignment of error:

> 1.  The trial court erred by denying Mr. Norris' "motion for sentencing," which requested that the trial court vacate his original sentence and accord him a *de novo* sentencing hearing.

(Doc. 14, Ex. 6-7). This appeal was successful. The state court of appeals held that Petitioner was entitled to a *de novo* sentencing hearing because, at the original sentencing hearing held in 2004, Petitioner was not notified of his postrelease control obligation. On December 8, 2010, the court vacated the sentence and remanded the matter to the trial court for a re-sentencing hearing. *State v. Norris,* 2010 WL 5110097, *3 (Muskingum Co. App. Dec. 8, 2010).

On December 20, 2010, Petitioner filed a "motion for determination of status of proceedings," asking for clarification of the Court of Appeals' ruling, seeking a prompt re-sentencing, and asking for release from custody prior to the re-sentencing. (Doc. 14, Ex. 10). Petitioner's re-sentencing hearing was held on December 21, 2010. Just prior to the re-sentencing, Petitioner filed a motion to withdraw his guilty plea. The trial court did not address that motion at the hearing, but issued a briefing schedule on the motion to withdraw the guilty plea. *Id.*, Ex. 20. As to the re-sentencing, the trial court did not hold a *de novo* hearing, but instead held a hearing in which it imposed the same sentence of thirty-three years to life, and notified Petitioner of the five year mandatory

5

release which would follow. (Doc. 14, Ex. 11).

On January 20, 2011, Petitioner appealed his re-sentencing. *Id.*, Ex. 12. His counsel filed a brief asserting that the appeal was frivolous and moved to withdraw as counsel, following the procedure set out in *Anders v. California,* 386 U.S. 738 (1967). *Id.*, Ex. 13-14. Petitioner proposed the following assignment of error:

> 1.  The trial court erred in re-imposing a period of post release control and failed to conduct a proper re-sentencing hearing.

*Id.*, Ex. 13. Petitioner filed a *pro se* memorandum but did not raise any additional assignments of error. *Id.*, Ex. 15. On February 3, 2012, the appellate court affirmed the trial court's re-sentencing. *State v. Norris*, 2012 WL 424957 (Muskingum Co. App. Feb. 3, 2012). The court of appeals held that a limited re-sentencing to provide post-release control notification was sufficient and that a *de novo* sentencing hearing was not required. *See id.*, relying on *State v. Fischer,* 128 Ohio St.3d 92 (2010).

On March 14, 2012, Petitioner appealed that decision to the Ohio Supreme Court. Doc. 14, Ex. 17. In his Memorandum in Support of Jurisdiction, he raised the following propositions of law:

> 1.  Trial court committed reversible error when it failed to accord defendant a full *de novo* sentencing hearing as made obligatory by the law-of-the-case.
>
> 2.  Appellate Court violated due process (U.S.C.A. Const. Amend. 14) when it failed to appoint substitute counsel pursuant to *Anders v. California* (1967), 386 U.S. 738, and then compounded that plain error by erroneously holding that "appellant did not file a pro se brief alleging any additional assignments of error." see: *State v. Murnahan,* 63 Ohio St. 3d 60; and *Strickland v. Washington*, 466 U.S.

668.

*Id.*, Ex. 18. On June 6, 2012, the Ohio Supreme Court declined jurisdiction. *Id.*, Ex. 19.

Returning now to Petitioner's motion to withdraw his guilty plea, which, as noted above, was filed one day before he was re-sentenced, Petitioner argued that "had he known that post release control was mandatory for a period of five years, he would not have pleaded guilty." *Id.*, Ex. 20.  The trial court denied that motion on October 31, 2012, and Petitioner appealed that ruling as well. *Id.*, Ex. 24-25.  He raised a single assignment of error:

> 1. When the trial court completely fails to advise a criminal defendant at the plea colloquy that a mandatory term of post-release control will be part of the sentencing, the court fails to comply with Crim. R. 11(C)(2)(a), and the resulting guilty plea must be vacated.  *See State v. Sarkozy,* 117 Ohio St.3d 86; *State v. Boswell*, 121 Ohio St. 3d 575; and *State v. Montez-Jones,* 2011-Ohio-1202, (Ohio App. 5 Dist.).

 The court of appeals affirmed the judgment of the trial court, holding that the claim was barred by *res judicata*  because it could have been raised on direct appeal or during one of his other appeals.  *State v. Norris*, 2013 WL 1097821 (Muskingum Co. App. March 15, 2013).

On April 29, 2013, Petitioner appealed to the Ohio Supreme Court, presenting the following propositions of law:

> 1. Whether the court of appeal's 'modification' of ["the second sentence in the *Bezak* syllabus as ill-considered"] id: at: OPINION at ¶19, offends due process, implicates fundamental fairness, and is facially 'contrary to law.' see: U.S.C.A. Const. Amend 14. *compare: *State v. Montez-Jones*, 2011 Ohio 1202 (Ohio App. 5 Dist.); and *State v. Norris,* 5th Dist. No. CT 10-0020, 2010 Ohio 6076; and *State v. Singleton*, 124 Ohio St.3d 173, 2009 Ohio 6434, 920 N.E. 2d 958.

7

2.      When a trial court completely fails to accord any mandatory post release control notification, Crim. R. 11(C)(2)(1), at the 'plea colloquy,' that plea was not knowingly, intelligently, and voluntarily made [*State v. Sarkozy*, 117 Ohio St.3d 86] and must be vacated as *unconstitutional as a matter of law and fact.  See: *State v. Montez-Jones*, 2011 Ohi o1202 (Ohio App.5 Dist.).

(Doc. 14, Ex. 29-30).  The Ohio Supreme Court declined jurisdiction on July 24, 2013.  *Id.*, Ex. 32.

On September 9, 2013, Petitioner filed a "motion for allied offense determination" with the state trial court, asking the court to determine whether his separate convictions should have been deemed as allied, rather than separate, offenses. *Id.*, Ex. 33.  The court denied Petitioner's motion.  *Id.*, Ex. 36.  Petitioner appealed that ruling, asserting the following assignments of error:

1.      Whether the trial court's recharacterization of appellant's motion for 'allied offense determination' O.R.C. 2941.25; as a post-conviction relief petition (for the purpose of denying relief) offends due process and fundamental fairness where the record clearly reveals a prima facie case for the requested relief.

2.      Whether the duty to 'inquire' and 'determine' whether multiple offenses constitute[s] allied offenses of similar import is jurisdictional and therefore places a mandatory duty on the trial court, or whether, O.R.C. 2941.25 is 'discretionary,' and hence, may be waived by the court or the defendant and subject to the application of the doctrine of *res judicata.*

*Id.*, Ex. 38.  The appellate court affirmed the ruling of the trial court, concluding that the motion was barred by *res judicata*. The court pointed out that Petitioner could have raised the merger claim in "a timely direct appeal from his sentencing...judgment." *State v. Norris*, 2014 WL 2159369 (Muskingum Co. App.  May 19, 2014).

8

Petitioner appealed this decision to the Ohio Supreme Court, raising the following propositions of law:

1.  Regardless of 'recharacterization' or 'reclassification' of a proceeding for relief from a facially void judgment, due process and fundamental fairness requires a trial court to ignore the procedural irregularities of the proceeding; to vacate the void judgment, and to resentencing the offender in accordance with established law. see: O.R.C. § 2941.25.

2.  Where, as here, the record presents a prima facie case for 'allied offense inquiry and determination, it is constitutional error of the first magnitude and violative of the Federal Constitution's Fifth Amendment Double Jeopardy Protections (which cannot be waived) for a trial court completely disregard 'statutory requirements' thus failing to 'inquire' and 'determine' whether those offenses were/are actually allied offenses of similar import

(Doc. 14, Exhibit 41).  On September 24, 2014, the Ohio Supreme Court declined jurisdiction.  (Doc. 14, Ex. 43).

Petitioner then filed this, his second,  petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254 in the United States District Court for the Northern District of Ohio, signing it on February 9, 2015.  (Doc. 1).   The case was transferred to this District.  Respondent filed a Return of Writ on July 22, 2015, (Doc. 14), arguing, in part, that grounds two and three of the petition should be transferred to the Court of Appeals pursuant to 28 U.S.C. §2244(b) as successive.   On July 31, 2015, Petitioner filed a motion for summary judgment, which was fully briefed but then determined by the Court to be moot because it raised the same issues covered in the habeas petition.  (Doc. 17).  On November 17, 2016, the Court issued an Order instructing Respondent to indicate whether he would withdraw his request to have grounds two and three of the petition

9

transferred to the Court of Appeals as successive, noting that in *In re Stansell*, 828 F.3d 412, 419 (6th Cir. 2016), the Court of Appeals had held that a re-sentencing of the kind which occurred here resulted in a new judgment and that a habeas corpus petition filed challenging that judgment could not be deemed to be successive.  (Doc. 22).

Respondent subsequently withdrew its request for a transfer and filed a supplemental return of writ addressing grounds two and three of the petition.  (Doc. 23).  Petitioner filed a supplemental traverse (Doc. 24) and the case is now ripe for consideration.

## II.  The Petition

The petition raises the following grounds for relief:

**Ground one:**  Due process is implicated where a trial court, being under a specific appellate court mandate for ['de novo sentencing'] accords only a partial de novo procedure renders the procedure a mere nullity and void.

**Ground two**:  Due process is offended, and a criminal defendant's guilty plea must be deemed unconstitutional where such plea was not knowingly, intelligently and voluntarily made.  See: Ohio Crim.R. 11(C)(2)(a); and O.R.C. §2929.19(B)(3)(e) ['the oral pronouncement'] requirement.

**Ground three**:  Conviction obtained in violation of due process clause and Fifth Amendment prohibition against double jeopardy.  See: *North Carolina v. Pearce*, 395 U.S. 711, 717; *Ohio v. Johnson,* 467 U.S. 493, 498; and *Brown v. Ohio*, 432 U.S. 161, 165.

Respondent argues that ground one is procedurally defaulted and grounds two and three are both time-barred and procedurally defaulted.  The Court will first discuss the statute of limitations.

## III.  Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which

became effective on April 24, 1996, provides for a one-year statute of limitations on the

filing of habeas corpus actions. 28 U.S.C. § 2244(d)(1) provides:

> (d) (1) A one-year period of limitation shall apply to an application for a
> writ of habeas corpus by a person in custody pursuant to the
> judgment of a state court. The limitation period shall run from the
> latest of-
>
> (A)    the date on which the judgment became final by the conclusion of
> direct review or the expiration of the time for seeking such review;
>
> (B)    the date on which the impediment to filing an application created
> by State action in violation of the Constitution or laws of the United
> States is removed, if the applicant was prevented from filing by
> such State action;
>
> (C)    the date on which the constitutional right asserted was initially
> recognized by the Supreme Court, if the right has been newly
> recognized by the Supreme Court and made retroactively
> applicable to cases on collateral review; or
>
> (D)    the date on which the factual predicate of the claim or claims
> presented could have been discovered through the exercise of due
> diligence.
>
> (2) The time during which a properly filed application for State
> post-conviction or other collateral review with respect to the
> pertinent judgment or claim is pending shall not be counted toward
> any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1),(2).  The time bar may be overcome if a petitioner is able to make

a credible showing of actual innocence.  *See Tyler v. Ray*, 610 Fed.Appx. 445 (6th Cir.

2015); *Schulup v. Delo*, 513 U.S. 298, 317 (1995).

Even where a §2254 petition is statutorily time-barred, equitable tolling may save

an otherwise untimely petition.  The one-year statute of limitations is not jurisdictional

11

and is subject to equitable tolling. *Holland v. Florida*, 560 U.S. 631, 645 (2010); *Perkins v. McQuiggin*, 670 F.3d 665, 670 (6th Cir. 2012). Whether the statute of limitations should be equitably tolled depends upon whether a petitioner shows: (1) that he has been diligent in pursuing his rights; and (2) that an extraordinary circumstance prevented him from filing within the prescribed time. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). The petitioner bears the burden of showing that he is entitled to equitable tolling. *Id*.

Respondent argues that grounds two and three (but not ground one) are time-barred. Respondent points out that neither ground relates to anything which occurred at the re-sentencing, but rather to issues which were apparent at the time the original sentence was imposed in 2004. Since Petitioner clearly did not file this petition within one year of the date on which that judgment became final - indeed, that was the basis for this Court's dismissal of the prior petition - Respondent claims that the Court must reach the same result here.

Because, in the Court's view, Respondent has failed to appreciate the current state of the law in this Circuit concerning when the statute of limitations begins to run after a new judgment has been entered and has failed to cite controlling authority, the Court will set out its analysis in some detail.

Here is the key part of Respondent's argument:

> The state trial court's imposition of post-release control does not affect the statute of limitations regarding claim (sic) arising out of Norris' convictions or original sentence. See *Jackson v. Lazaroff*, No. 15-4335, slip. op at 3, n. 1 (6th Cir. Nov. 21, 2016)(attached)(citing *In re Stansell*, 828 F.3d 412, 418 (6th Cir. 2016) which noted continuing validity of *Bachman v.*

*Bagley*, 487 F.3d 979 (6th Cir. 2007) in context of statute of limitations issues).

Since the petition was due in April 2007 and the current habeas corpus petition was filed in 2015, the petition is time-barred.

*Supplemental Return*, Doc. 23, at 6.

*Jackson v. Lazaroff* does indeed say that the validity of *Bachman* - which applied a concept of "divisible judgments" for limitations purposes, holding that when a new judgment is entered, it does not start the limitations clock running again for any part of the prior judgment which was not altered - was not called into question in *Stansell*.  That statement (which, by the way, is found in a footnote in an opinion which is not only unpublished but which cannot be found on Westlaw) is *dictum*, and while  it is literally correct  in its reading of *Stansell*, it simply does not address how the case law relating to the limitations period developed after *Stansell* was decided.

*Stansell* was a successive petition case and not a limitations case.  In reaching its decision that a petition filed after a re-sentencing cannot be deemed successive, *Stansell* held that "the federal habeas statute speaks of one 'judgment,' not many, per term of custody."  *Stansell*, 828 F.3d at 418.  *Stansell* recognized that *Bachman* had adopted a different approach (splitting a single judgment into "multiple mini-judgments"for limitations purposes,  *see id*.) but it rejected that approach in the context of successive petitions.  However, because the statute of limitations question was not before the Court of Appeals in *Stansell*,  it pointed out that its decision, and the decisions on which it

13

relied, "do not answer the distinct statute-of-limitations question raised in *Bachman*." *Id*. In other words, that remained an open question.

The Court of Appeals was quickly confronted with that open question, however, and answered it in *Crangle v. Kelly*, 838 F.3d 673 (6th Cir. 2016). The facts of that case - which cannot be distinguished from the facts of this one - are these. Crangle, the petitioner, was originally sentenced in 2007. Although his plea agreement indicated that he would be subject to post-release control after serving his sentence of imprisonment, he was told differently at his sentencing hearing, and the judgment entry did not impose post-release control. That judgment became final in 2008.

In 2010, the Ohio Supreme Court held, in *State ex rel. Carnail v. McCormick*, 126 Ohio St.3d 124 (2010), that imposition of post-release control in certain felony cases was mandatory. Crangle, seizing on this decision, moved to withdraw his guilty plea, claiming that his original sentence was unlawful and his plea was therefore not knowing and voluntary. The state court denied that motion but, recognizing that it had erred, entered a new judgment which included the mandatory term of post-release control. Crangle pursued multiple appeals of that decision but was unsuccessful. He then filed a petition for a writ of habeas corpus. Because it was not filed within one year of the date that the original judgment became final, the respondent argued that it was time-barred, and the District Court (based on the state of the law at that time) agreed. Crangle appealed.

The Court of Appeals reversed. Citing to *Magwood v. Patterson*, 561 U.S. 320

14

(2010) and *King v. Morgan*, 807 F.3d 154 (6th Cir. 2015) - the same decisions cited by the *Stansell* court in support of its decision - the Court of Appeals held that "[t]he interpretation of 'judgment' in *Magwood* and *King* applies with equal force to § 2244(d)(1)(A) and § 2254(a)[the limitations provisions in question]." *Crangle*, 838 F.3d at 678. Applying that reasoning led the *Crangle* court to conclude that "a new sentence not only permits a challenge to either the new sentence or the undisturbed conviction, but also restarts AEDPA's one-year window to challenge that judgment." *Id*. In making that determination, the Court of Appeals specifically observed that "*Magwood* and *King* likewise abrogated *Bachman v. Bagley*, 487 F.3d 979, 983 (6th Cir. 2007), where we held that a sexual predator designation that was imposed after the original judgment restarted the one-year clock only for a challenge to the sexual predator designation." *Id*. And if one views *Bachman* on Westlaw, it has been "red-flagged" with this notation: "Abrogation Recognized by Crangle v. Kelly, 6th Cir.(Ohio), September 22, 2016."

As noted, the Court finds it impossible to distinguish *Crangle*. Here, the plea agreement was silent as to post-release control - a fact which is actually more favorable to Petitioner, because Crangle' plea agreement advised him about post-release control - and post-release control was not imposed in Petitioner's 2004 sentencing entry. *See* Case No. 2:07-cv-795, Doc. 6, Ex. 5. That entry recited only that Petitioner might, at some point, be released on parole, and that any parole "would be subject to the rules and regulations adopted by the parole authority." *Id*. The state court of appeals remanded Petitioner' case for re-sentencing based on the same Ohio Supreme Court

15

case, *State ex rel. Carnail v. McCormick*, 126 Ohio St.3d 124 (2010), that precipitated Crangle's re-sentencing. *See State v. Norris*, 2010 WL 5110097 (Muskingum Co. App. Dec. 8, 2010). The new judgment entry filed in Petitioner's case (Doc. 14, Ex. 11) imposed post-release control. *Crangle* also held, rejecting a contrary argument from the State, that a new sentence imposing post-release control is more restrictive than a sentence which contemplates parole, stating that "[p]ost-release control materially increases the potential restrictions on Crangle's liberty " beyond any parole restrictions he might have been facing as a result of his original sentence. *Crangle*, 838 F.3d at 679. The same is true here. That fact is significant because *Crangle* acknowledged and did not overrule a line of cases holding that when a re-sentencing benefits a defendant, the limitations period is not restarted by the new judgment entry. Given that the same facts underlie both this case and *Crangle*, this Court is duty-bound to reach the same result.

Regardless of the implication of the footnote which Respondent cited from *Jackson v. Lazaroff* - a footnote which post-dates *Crangle* and which did not address whether some case other than *In re Stansell* had called *Bachman v. Bagley* into question - Respondent's failure to discuss, or even cite, to *Crangle* is troubling. *Crangle* is a case from a controlling jurisdiction, is not distinguishable on its facts, and is directly contrary to Respondent's position. It should have been cited in the supplemental return.

For all of the reasons just explained, the Court holds that the December 21, 2010 entry is the applicable judgment for limitations purposes. It thus rejects Respondent's argument that the statute of limitations for any of the grounds presented in the petition

16

expired in 2007, and will not recommend dismissal of any portion of the petition as time-barred.

### IV. Procedural Default

As an alternative ground for dismissal, Respondent argues that grounds two and three are both subject to dismissal on grounds of procedural default. The Court will now examine the merits of that argument.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If the defendant fails to do so, but still has an available way to present those claims, the petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6, 103 (1982) (citing *Picard v. Connor,* 404 U.S. 270, 275–78 (1971)). Where a petitioner has failed to exhaust the claims raised in the petition but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas...." *Coleman v. Thompson,* 501 U.S. 722, 735 n. 1 (1991).

The term "procedural default" has come to describe the situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular claim to the highest court of the State so that the State has a fair chance to correct any errors made in the course of the trial or the appeal before a federal court intervenes in

17

the state criminal process. This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub,* 377 F.3d 538, 552–53 (6th Cir. 2004) (*quoting Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)). One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court do so. In the words used by the Supreme Court in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case-that is, they are "procedurally defaulted."

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is waived by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." Second, the Court must determine whether the state courts actually enforced the state procedural sanction. Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal

constitutional claim. Finally, if the Court has determined that a state procedural rule

was not complied with, and that the rule was an adequate and independent state

ground, then the petitioner must demonstrate that there was cause for him not to follow

the procedural rule, and that he was actually prejudiced by the alleged constitutional

error. *Id.* This "cause and prejudice" analysis applies to failures to raise or preserve

issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985). The

Ohio rule of *res judicata* satisfies the first three factors in *Maupin. See Jacobs v. Mohr*, 265

F.3d 407, 417 (6th Cir. 2001). The fourth factor is that the petitioner must demonstrate

that there was cause for him not to follow the procedural rule, and that he was actually

prejudiced by the alleged constitutional error. "Cause" for a procedural default is

ordinarily shown by "some objective factor external to the defense" which impeded the

petitioner's efforts to comply with the state's procedural rule. *Coleman v. Thompson*, 501

U.S. 722, 753 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). The Court will

discuss grounds two and three separately to determine if either was, as Respondent

contends, procedurally defaulted.

## A. Ground Two

Petitioner's second ground for relief is that his guilty plea was involuntary

because the trial court failed to notify him when he pleaded guilty that, if he was ever

released from prison, he would have to serve a term of post-release control. The first

time he raised that issue in state court was in the motion to withdraw guilty plea which

he filed on December 20, 2010. Doc. 14, Ex. 20. Petitioner argued in that motion that he

19

did not know, and was not informed, at the time he pleaded guilty that he would be subject to a mandatory five-year term of post-release control upon his release from prison.  Had he known that fact, he argued, he would not have pleaded guilty but would have gone to trial.

The State's opposing memorandum (Ex. 21) , filed on March 28, 2012, took the position, first, that the motion had to be judged under the standards applicable to post-sentence motions (Petitioner had argued that because his original sentence was unlawful, he should get the benefit of the more liberal standard which is applied to pre-sentence motions) and, second, that Petitioner could not satisfy the "manifest injustice" standard which the court had to apply.  The State noted that the motion was not accompanied by either an affidavit or any other credible evidence supporting Petitioner's assertion that, had he known about the possibility of  post-release control, he would have insisted on a trial.  The State reasoned that Petitioner accepted a minimum sentence of thirty-three years, with the possibility of life imprisonment, and that it seemed extremely unlikely that the imposition of five years of post-conviction release, instead of a parole term, would have been a "deal-breaker."  It also argued that under a prior decision of the Fifth District Court of Appeals, *res judicata* barred any attack on the validity of the three convictions and as to all of the sentences imposed other than post-release control. Petitioner filed a reply, and the trial court, in an entry unaccompanied by an opinion, denied the motion. Ex. 24.

Petitioner timely appealed.  He made essentially the same arguments on appeal,

asserting that the failure to advise him about the possibility of post-release control violated Ohio Crim. R. 11(C)(2)(a) and that the trial court had been required to vacate the guilty plea.  He also cited the Fourteenth Amendment Due Process clause in his brief.  Ex. 26.  The State's opposing memorandum (Ex. 27) mirrored the brief it filed at the trial court level.  In its decision overruling Plaintiff's assignment of error, the state court of appeals said:

> Appellant asserts that his plea must be vacated because the trial court failed to advise him of mandatory postrelease control at the plea hearing. However, appellant's attempt to withdraw his guilty plea, made subsequent to this Court's remand for resentencing, is barred by the doctrine of res judicata. *See State v. Hazel*, 11th Dist. Nos. 10AP–1013, 10AP–1014, 2011–Ohio–4427. *Res judicata* bars the assertion of claims against a valid, final judgment of conviction that have been raised or could have been raised on appeal. *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967). "Ohio courts of appeals have applied *res judicata* to bar the assertion of claims in a motion to withdraw guilty plea that were or could have been raised at trial or on appeal. *State v. Ketterer*, 126 Ohio St.3d 448, 2010–Ohio–3831, 935 N.E.2d 9, ¶ 59, citations omitted. Appellant clearly could have raised the issue he now raises on direct appeal or during one of his earlier appeals. As is stated above, appellant did raise the issue of postrelease control in 2010.
>
> Appellant's sole assignment of error is, therefore, overruled.

*State v. Norris*, 2013 WL 1097821, *3 (Muskingum Co. App. March 15, 2013).  As noted above, Petitioner timely but unsuccessfully sought review from the Ohio Supreme Court.  As the last reasoned decision from a state court, this Court must accept the Fifth District Court of Appeals' decision as stating the rationale used by the State in rejecting Petitioner's claim.  The question raised by that decision, and by Respondent's assertion

of procedural default, is whether the state court's application of *res judicata* to this situation - which prevented the state courts from reaching the merits of Petitioner's constitutional claim - is an adequate and independent ground for its decision.

The state court reasoned that Petitioner could have presented the issue of having entered a guilty plea without knowing the full consequences of it in one of his earlier appeals. Although the court did not say which one of them it was using as the basis of its *res judicata* ruling, it implied that he could have raised it in the 2010 appeal he pursued which led to the order that he be re-sentenced. It is therefore helpful to examine the filings which led to that appeal.

That process began when Petitioner filed a motion with the trial court on March 5, 2010. Because the Ohio Supreme Court's decision in *State ex rel. Carnail v. McCormick*, 126 Ohio St.3d 124 (2010), which was what led to the re-sentencing, was not issued until June 16, 2010, Petitioner did not cite that decision as the basis for his motion, but rather a prior decision, *State v. Bezak*, 114 Ohio St. 3d 94 (2007), which stated, in the syllabus, that

> When a defendant is convicted of or pleads guilty to one or more offenses and postrelease control is not properly included in a sentence for a particular offense, the sentence for that offense is void. The offender is entitled to a new sentencing hearing for that particular offense.

Petitioner's argument was confined to the proposition that, as was the case in *Bezak*, his sentence was void and a new sentencing hearing was required. *See* Doc. 14, Ex. 5. The trial court denied the motion in an entry which states, in full, "Defendant's motion for

22

resentencing is denied. Defendant is not subject to post release control." *See* Ex. 6. The only issue presented on appeal related to whether a new sentencing hearing was required. After the State conceded error, the remand was ordered. It is not clear exactly why the state court later concluded that a claim relating to the voluntariness of Petitioner's guilty plea either could or should have been included as part of that appeal.

The State, in its briefing on Petitioner's motion to withdraw his guilty plea, cited to the Ohio Supreme Court's decision in *State v. Fischer*, 128 Ohio St.3d 92 (2010), which, among other things, overruled the second sentence of the syllabus in *Bezak* and held that a *de novo* sentencing hearing was not required to correct an error about the imposition of post-release control. The court also concluded, however, that once such a sentencing proceeding was held, any appeal from that proceeding could properly raise issues only about the new portion of the sentence, and that other "claims []which did not involve a void sentence or judgment, were barred by *res judicata*." *Id*. at 101. Under that holding, Petitioner's appeal from the resentencing had to be limited to issues about that process, which it was. Although *Fischer* says nothing about whether *res judicata* would also bar relief in the context of a motion to withdraw a guilty plea, one might argue - as the State did - that, at least as to Petitioner's murder conviction, on which post-release control was not imposed, his prior entry of the plea and the failure to attack it as part of his first direct appeal precluded any later effort to withdraw his plea.

Part of the problem with any such argument - and Respondent has not made that argument, limiting the response to two sentences which do no more that cite to the Fifth

23

District Court of Appeals opinion, *see* Doc. 23, at 11 - is that the Ohio Supreme Court has also held that a post-sentence motion for leave to withdraw a guilty plea is not a post-conviction petition and is therefore not subject to the same *res judicata* rules which apply to those proceedings.  *See State v. Bush*, 96 Ohio St.3d 235 (2002).  Ohio courts have applied *res judicata* principles to successive motions for leave to withdraw a guilty plea, *see, e.g., State v. Sneed*, 2005 WL 926993 (Cuyahoga Co. App. Apr. 21, 2005), but here Petitioner filed only a single motion for leave to withdraw.  This Court is not persuaded that the Ohio courts regularly apply the doctrine of *res judicata* in this situation to preclude reaching the merits of a motion for leave to withdraw a guilty plea, especially one which was premised on the development of case law subsequent to the plea.  Since Respondent has not addressed this element of the procedural default analysis, the Court declines to dismiss the second ground for relief on grounds of procedural default.

## B.  Ground Three

Ground three stands on a different footing.  Petitioner raised this claim for the first time in state court by way of his "Motion for Allied Offense Determination" which he filed on September 9, 2013.  Doc. 14, Ex 33.  In it, he cites a plethora of case law, but does not state exactly which of the three offenses to which he pleaded guilty, and for which he was sentenced, should have been treated as allied offenses of similar import and therefore merged for sentencing purposes.  The State responded that review of this issue was barred by *res judicata* because it was not raised on direct appeal.  The trial

court denied the motion and the appeals court affirmed, holding that "Appellant had a prior opportunity to litigate the allied-offenses claims he sets forth in the instant appeal via a timely direct appeal from the sentencing hearing and resulting judgment entry; his most recent round of arguments are therefore barred under the doctrine of *res judicata.*" *State v. Norris*, 2014 WL 2159369, *2 (Muskingum Co. App. May 10, 2014).

That holding is undoubtedly a correct application of Ohio law and one which is regularly followed. Any issue about allied offenses was evident on the face of the record, and such claims must be raised in Ohio by way of direct appeal. Petitioner did not present such a claim either in first delayed direct appeal, which is where it should have been raised (although it may have been defaulted even then) or in his appeal from the judgment entered after re-sentencing. There is no mechanism by which such an issue can be raised by post-judgment motion, especially one which, as here, was filed so late in time. Further, the state court of appeals also concluded that his claim failed on its merits because the state law on which he relied could not be applied to his case. Finally, the Court cannot see any possibility that he has asserted a meritorious federal double jeopardy claim here. Petitioner is simply not entitled to relief on Ground Three.

## V. The Merits

### A. Ground One

Petitioner's first ground for relief attacks the procedure followed by the state court on December 21, 2010, when, pursuant to the remand from the Fifth District Court of Appeals, it imposed a term of post-release control. He argues that although the

court of appeals had concluded that he was entitled to an entirely new, or *de novo*, sentencing hearing, he got less than a full hearing. The transcript of the hearing shows that the trial judge announced that the purpose of the hearing was to advise Petitioner of the terms of post-release control. After that was done, Petitioner's counsel objected to the proceedings, stating that Petitioner "should have been in the same position today if the initial sentencing hearing had not occurred." Doc. 14, Transcript of Resentencing. In his appeal from that proceeding, Petitioner argued that he had been denied the full hearing which, in his view, the court of appeals had ordered. That court, finding that the procedure comported with the Ohio Supreme Court's decision in *State v. Fischer, supra*, disagreed and overruled his assignment of error. *State v. Norris,* 2012 WL 424957 (Muskingum Co. App. Feb. 3, 2012).

Respondent argues that any claim that the trial court failed to follow the mandate of the state court of appeals is a state law claim which cannot be raised in federal habeas corpus. Respondent also asserts that any federal component to this claim, which might include either an Ex Post Facto claim or a due process claim, has been procedurally defaulted because it was not presented in that fashion to the Fifth District Court of Appeals. Finally, Respondent says that this claim fails on its merits.

Two briefs were filed on this issue at the court of appeals level. Petitioner's counsel filed an *Anders* brief which noted that *Fischer* had been decided shortly after the sentencing hearing and that the procedure followed by the trial judge was authorized by *Fischer.* That brief clearly raised no federal constitutional claim. Doc. 14, Ex. 13.

Petitioner's *pro se* brief, Ex. 15, does assert both a due process claim and an Ex Post Facto claim.  The state court of appeals did not strike that brief, simply commenting that the brief did not allege any additional assignments of error. *State v. Norris,* 2012 WL 424957, *1.  The Court concludes that this claim was fairly presented to the state courts. The fact that the court of appeals chose not to address the federal constitutional issues is not determinative and, in fact, if this Court were to conclude that those issues were simply overlooked, rather than evaluated and decided on their merits, by the state court, Petitioner's claim could be reviewed *de novo* rather than under the ordinary deferential standard of appeal found in the AEDPA.  *See, e.g., Johnson v. Williams*, 133 S.Ct. 1088, 1097 (2013).

On its merits, however, the claim fails.  A very similar claim was raised, and rejected on its merits, in *Pryor v. Oppy*, 2014 WL 7014673 (S.D. Ohio Dec. 9, 2014).  The petitioner in that case was also denied a *de novo* sentencing hearing when his sentence was amended to include a term of post-release control.  This Court fully endorses Magistrate Judge Deavers' explanation of the law in *Pryor* when she stated:

> The Ex Post Facto Clause derives from the basic principle that a criminal statute must give fair warning of the conduct that it makes a crime. *Bouie v. City of Columbia,* 378 U.S. 347, 350–51, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1963). This is because "[d]ue process ... does not countenance an 'unforeseeable and retroactive judicial expansion of narrow and precise statutory language.' " *Metrish v. Lancaster*, ––– U.S. ––––, ––––, 133 S.Ct. 1781, 1787, 185 L.Ed.2d 988 (2013) (citing *Bouie*, 378 U.S. at 352). "The crucial test is 'whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct' could be criminally penalized." *O'Neal v. Bagley*, 743 F.3d 1010, 1015 (6th Cir. 2013) (citing *Lanier*, 520 U.S. at 267; *Bouie*, 378 U.S. at 353–55. The Ex

> Post Facto Clause limits the powers of the legislature "and does not of its own force apply" to judicial decision making. *Rogers v. Tennessee*, 532 U.S. 451, 456, 121 S.Ct. 1693, 149 L.Ed.2d 697 (2001) (quoting *Marks v. United States*, 430 U.S. 188, 191, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977).

*Pryor*, 2014 WL 7014673, *7.  Although at the time Pryor received his resentencing hearing, the law in Ohio did not require a *de novo* hearing (as it appears to have done in the interim between the decisions in *Bezak* and *Fischer*), this Court simply cannot conclude that the difference between the two proceedings has any constitutional significance.  As *Pryor* also observed, "[t]he fact that [Pryor] was not entitled to a *de novo* sentencing hearing based on the trial court's failure to advise him that he would be subject to post release control did not change the punishment for, or the elements of the crimes with which he was charged."  *Id*. at *8.  That is true here as well. The law at the time Petitioner was sentenced provided for - indeed, required - that on the two felony counts other than the murder count, he receive a term of post-release control.  That is what he received at the re-sentencing hearing.  That is simply not retroactive punishment.  As aptly put by the court in *Braddy v. Bunting*,  2014 WL 4285605, *13 (N.D. Ohio Aug. 6, 2014), *adopted and affirmed* 2014 WL 4285632 (N.D. Ohio, Aug. 29, 2014), "*Fischer* does not criminalize conduct nor does it expose Petitioner to the possibility of a greater sentence than the sentence originally imposed."  Because that is so, there is no merit to the constitutional claims raised as part of Ground One.

## B.  Ground Two

Ground Two has been discussed extensively above.  That discussion

demonstrates that Petitioner did present this claim to the Ohio courts and that they did not reach the merits due to what appears to be an erroneous, or at least inconsistent, application of the doctrine of *res judicata*.  Again, it would appear that this Court can review the claim *de novo*.  Further, because Respondent has raised only procedural defenses to the claim, the Court does not have the benefit of any merits briefing from Respondent.  However, because the claim appears on its face to lack merit, rather than prolong these proceedings, the Court will address it here rather than asking Respondent for a third round of briefing.

The gist of Petitioner's federal constitutional claim (as opposed to his state law claim, which rests on the application of Ohio R. Crim. P. 11 and which is not cognizable in federal habeas corpus) is that his guilty plea was not knowing and voluntary because of the State's failure to advise him that, if released, he could be subjected to a term of post-release control on one or both of the felony counts other than aggravated murder. He claims that, had he known that fact, he would not have entered his plea.  He makes that claim despite the fact that, as the trial judge explained to him at the resentencing hearing, if he were ever to be released, he would also be on parole for the aggravated murder charge and if that parole were revoked, he could be sent back to prison for life, and not just the five years that could be imposed for violations of post-release control.

The Court has of Appeals has set out the general legal principles which apply to cases like this one in decisions like *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994):

> To be valid, a guilty plea must be made voluntarily and intelligently.
> *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274
> (1969). The plea must be made with knowledge of the "relevant
> circumstances and likely consequences." *Brady v. United States*, 397 U.S.
> 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970). .... Determining
> whether a plea was made voluntarily requires an evaluation of all the
> relevant circumstances surrounding the plea. *Caudill v. Jago*, 747 F.2d 1046,
> 1050 (6th Cir. 1984); *Brown*, 718 F.2d at 786. The "ultimate question" is if
> the plea was in fact voluntary and intelligent. *Pitts v. United States*, 763
> F.2d 197, 200 (6th Cir. 1985).

Applying these principles, this Court has held that the failure of a state trial court

correctly to inform a defendant about post-release control does not render a plea

knowing and involuntary.  For example, in *Myers v. Warden, Warren Correctional

Institution*, 2011 WL 7039933 (S.D. Ohio Aug. 9, 2011), *adopted and affirmed* 2012 WL

122568 (S.D. Ohio Jan. 17, 2012), the petitioner claimed that his plea was not knowing

and voluntary because he was told, incorrectly, that he would be subject to post-release

control, when, in fact, the offense he pleaded guilty to was not a crime for which that

sentence was available.  Although the petitioner was clearly misinformed about the

possible consequences of his plea, this Court found no merit in his constitutional claim

because he was not misled "into believing that the maximum term of imprisonment he

faced was less than a life term" - which is also true in this case - and because, given the

fact that the petitioner knew he would not be released on any type of control before the

expiration of his minimum sentence (15 years) and knew that he could go back to prison

after release, "it is highly unlikely that the misinformation regarding post-release

control influenced or was even considered by petitioner in deciding whether or not to

plead guilty." *Id.* at *8-9.

The situation presented here is similar to a claim that, but for the failure of counsel to advise a defendant properly prior to the entry of a plea, that defendant would have rejected the plea agreement and gone to trial.  In that context, the courts have said that

> The petitioner must ... show a reasonable probability that but for counsel's errors, he would not have pleaded guilty, because there would have been a reasonable chance that he would have been acquitted had he or she insisted on going to trial. *See Garrison v. Elo,* 156 F. Supp. 2d 815, 829 (E.D. Mich. 2001). A habeas petitioner's conclusory allegation that, but for an alleged attorney act or omission he or she would not have pleaded guilty, is therefore insufficient to prove such a claim. *Id.* The test of whether a defendant would have not pleaded guilty if he or she had received different advice from counsel "is objective, not subjective; and thus, 'to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.'" *Pilla v. U.S.*, 668 F.3d 368, 373 (6th Cir. 2012)(quoting *Padilla v. Kentucky*, 559 U.S. at 372).

*Hairston v. Barrett*, 2016 WL 1392015, *5 (E.D. Mich. Apr. 7, 2016).

Petitioner did offer, at the re-sentencing hearing, to take the stand and swear that had he known about the mandatory imposition of  post-release control, he would not have pleaded guilty.  The trial judge was skeptical of that claim, and so is this Court. Saying something, even under oath, does not make it so, or even make it credible. There is only a minuscule likelihood that Petitioner would ever suffer consequences from being placed on post-release control.  As the state trial judge noted, if he is ever paroled on the aggravated murder charge, it would not be for at least 33 years

31

(according to the ODRC website, Petitioner's first parole hearing will not be held until August of 2036), and that date is unaffected by the sentence of post-release control. Further, if released, he would be on parole as well as post-release control, and the maximum term he could receive for a violation of parole would be life in prison, as opposed to five years for a violation of post-release control.  It is true that the conditions of post-release control might be somewhat more restrictive, but it is difficult to accept that a rational defendant in Petitioner's position, who was facing the death penalty if he went to trial, would have taken that risk just to avoid those conditions some thirty or forty years into the future.  Given the extreme unlikelihood of Petitioner's claim that he would have done just that, the Court is entitled to insist on something other than his bare statement to support that claim.  The record contains no such evidence.  Therefore, Ground Two fails on its merits.

## VI.  Recommended Disposition

For the reasons set forth above, the Magistrate Judge **RECOMMENDS** that the petition for a writ of habeas corpus be **DENIED** and that this action be **DISMISSED**..

## VII.  Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed

32

findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendati*on will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

/s/ Terence P. Kemp
United States Magistrate Judge